Ivory HOBBS

v.

**POLICE JURY OF MOREHOUSE PARISH et al.**

State of Louisiana, Intervenor.

Civ. A. No. 14836.

United States District Court
W. D. Louisiana,
Monroe Division.

Jan. 23, 1970.

R. Hunter Pierson, Knight E. Doggett, Doggett & deLaunay, Alexandria, La., for plaintiff.

Albin P. Lassiter, Dist. Atty., Monroe, La., Harold B. Judell, William H. Beck, Jr., Foley, Judell, Beck, Morel & Bewley, New Orleans, La., for defendants.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., John R. Hunter, Jr., Asst. Atty. Gen., Alexandria, La., for intervenor State of Louisiana.

Before AINSWORTH, Circuit Judge, DAWKINS, Chief District Judge, and PUTNAM, District Judge.

## OPINION

PER CURIAM.

The favorable results of an election in Morehouse Parish, Louisiana, authorizing the issuance of bonds to be paid from ad valorem taxes on property in that Parish, for the purpose of enlarging a public hospital, were promulgated July 8, 1969. July 22, 1969, Ivory Hobbs, a resident of Morehouse Parish, purportedly brought this would-be class action to procure a judgment declaring unconstitutional the provisions of Louisiana law [1] which give only "property taxpayers" the right to vote in elections called to approve the issuance of municipal bonds to be funded solely from property taxes. The complaint also seeks other relief, including an injunction preventing the issuance of bonds authorized in the above election, which would result from a judgment as sought. Pursuant to 28 U.S.C. § 2284, a Three-Judge District Court was convened to consider and decide this case.

September 24, 1969, defendant Police Jury filed a motion for summary judgment, supported by the affidavit of the Registrar of Voters for Morehouse Parish, on the ground, *inter alia*, that Hobbs was not a registered voter and was a nonregistered property owner and therefore had no legal standing to bring this action, either in his own right or as a member of the class he purported to represent, as required by Rule 23(a) of the Federal Rules of Civil Procedure.

On motion filed December 1, 1969, one member of this Court *ex parte* allowed to be substituted as party plaintiff one Louie Gene Simpson, the motion alleging that he was a non-property-owning registered voter of Morehouse Parish. However, one week later, December 8, 1969, Simpson filed an affidavit with this Court stating that he never had consented to his name being used as plaintiff in this suit, and that he desired his name to be withdrawn therefrom. December 15, 1969, defendant filed its motion in opposition to the substitution. Approximately three weeks after Simpson's request to have his name withdrawn as party plaintiff, January 5, 1970, Ollie Earlean Tennant petitioned this Court to allow her to intervene as party plaintiff in this action. No action on this motion to intervene has been taken until now by any member of this Court.

Defendant contends that to allow either Simpson or Tennant to enter this suit would be to constitute a new action which is barred by the provisions of Louisiana law.[2]

---

1. La.Const. Art. 14, § 14; La.R.S. 39:508; La.R.S. 33:4258.

2. La.Const. Art. 14, § 14(n):
   "*Contest of bond issue or tax; time.* For a period of sixty (60) days from the date of promulgation of the result of any election held under the provisions of this section, any person in interest shall have the right to contest the legality of such election, the bond issue provided

for, or the tax authorized, for any cause; after which time no one shall have any cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever. If the validity of any election, special tax or bond issue authorized or provided for, held under the provisions of this section, is not raised within the sixty (60) days herein prescribed, the authority to

These laws prohibit any person from contesting the validity of an election, called for the authorization and issuance of ad valorem tax-supported bonds, after sixty days from the date of promulgation of the results of such election. Here, as shown, the initial suit by Hobbs was within the sixty-day period but the attempted substitution of Simpson and intervention by Tennant were well beyond the sixty-day time limit.

Before reaching the merits of this case, or the Constitutional question sought to be presented, this Court must resolve the following issue: May a plaintiff, not a registered voter and a non-registered property owner, and consequently not a member of the class he seeks to represent, timely institute a class action to contest a Louisiana ad valorem tax bond election which will serve as a proper basis for a subsequently-substituted plaintiff or would-be intervenor who attempts to enter the suit long after expiration of the legal delay allowed by State law for contesting such elections?

█ It is axiomatic that one who attempts to sue in behalf of members of a class must be a member of the class he purports to represent. Hammer v. Campbell, 358 F.2d 215 (5 Cir. 1966) cert. denied 385 U.S. 851, 87 S.Ct. 76, 17 L.Ed.2d 79; 2 Barron & Holtzoff, Federal Practice and Procedure § 567, at 308 (Wright rev., 1961). Cf. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Cf. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5 Cir. 1969). See generally Wright, "Class Actions," 47 F.R.D. 169. Plaintiff Tennant contends that, while this may be so, timely institution of a suit which gives knowledge of the demand to the defendant, and in which proper service of process is made, is sufficient to interrupt prescription (a

misnomer, as will be shown *infra*) so that a later substituted plaintiff or would-be intervenor may proceed with the action as if he had brought the suit timely himself. Tennant's counsel cite Louisiana laws and jurisprudence supporting her contention. Defendant reasserts its position by citing the following passage from Barron & Holtzoff, Federal Practice and Procedure § 451:

"If the effect of an amendment is to substitute a new party for one originally named, it has been held to constitute a new and independent claim for relief which cannot be allowed after the statute of limitations has expired."

We note that this excerpt from Barron & Holtzoff was written before the 1966 amendments to the Federal Rules of Civil Procedure. In that year Rule 15(c), F.R.Civ.P., was amended to read, in part:

" * * * An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action against him*, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." (Emphasis added.)

As noted in Crowder v. Gordon's Transport, Inc., 387 F.2d 413 (8th Cir. 1967), the Advisory Committee note on the Rule 15(c) amendment states in part:

"The relation back of amendments changing *plaintiffs* is not expressly

---

issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters. The provisions of this

section shall not apply to the City of New Orleans."

See also La.R.S. 39:518, to the same effect.

treated in revised Rule 15(c) since the problem is generally easier. *Again the chief consideration of policy is that of the statute of limitations,* and the attitude taken in revised Rule 15 (c) toward the change of defendants extends by analogy to amendments changing plaintiffs." (Emphasis added.)

From the above, it plausibly might be argued that commencement of a class action by a party without standing to sue would interrupt the running of prescription.

Counsel for all parties cite Slack v. Stiner, 358 F.2d 65 (5 Cir. 1966), to support their contentions. In that case, individual plaintiffs brought an action against defendants before the statute of limitations had expired. The defendants were on notice of the basis of the suit, but during the course of the trial the action was converted into a class action. The Court of Appeals for the Fifth Circuit held that there was no class action before the Court until after the statute of limitations had run, and consequently the plaintiffs who intervened after that time were not entitled to recover. However, as noted by plaintiff, the Court stated:

"If, at the outset, the two suits had been class actions the question as to whether the suits were 'commenced' so as to toll the running of the limitation period might have been a difficult one."

Consequently, *Stiner* gives us little help.

■ All of the jurisprudence cited by both parties in support of their respective positions relates to cases dealing with statutes of limitations. In Louisiana, these time limits commonly are referred to as *prescriptive* periods. Though counsel have not mentioned it, we must note that the period of time involved in this case is what is known in Louisiana as a *peremptive* period. This characterization of the time limit for contesting the type of election involved in this case was most recently classified as a peremptive period by the Louisiana Supreme Court in Andrieux v. East Baton Rouge Parish School Board, 227 So.2d 370 (1969).[3]

As was said in Succession of Pizzillo, 223 La. 328, 65 So.2d 783, 786 (1953):

"* * * The difference between prescription and peremption is that the former simply bars the remedy whereas, in the latter, time is made of essence of the right granted and a lapse of the statutory period operates as a complete extinguishment of the right."

See, further, discussion on this subject in 29 La.Law Review 230 and authorities therein cited.

■ Had this case dealt with a simple prescriptive period, we may have been inclined to hold that institution of a class action by an improper party interrupted the running of prescription so as to allow a later, proper plaintiff, with appropriate standing, to prosecute the suit. However, we here are dealing with a peremptive period which has as its two distinctive characteristics (1) the complete extinguishment of the right of action after the time period has run, and (2) as was said by Professor Joseph Dainow, in 29 La.Law Review 230, in his discussion of "peremption" or "forfeiture," "* * * there can be no—repeat, no—interference with the running of time; there can be no interruption by suit or acknowledgment, nor suspension for minority or for other reasons."

■ Consequently, we must hold that institution of this purported class action in behalf of Ivory Hobbs, who was not a

3. We have strictly adhered to the view that the constitutional and statutory *peremptive* period operates as a complete extinguishment of the right to attack bond and tax elections." At pp. 370, 371 (authorities omitted). (Emphasis added.)

member of the class he purported to represent, was not a sufficient basis upon which to allow a later substituted or intervening plaintiff to proceed with the action. Moreover, Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), on which counsel for Hobbs, Simpson and Tennant rely in this suit for relief on the merits, expressly held that the rule enunciated by that decision would be applied only when the time for challenging the election result has not expired under state law.[4]

The peremptive period established by the Louisiana laws noted is based upon the strongest considerations of public policy in that it is in the public interest to protect the fisc against uncertainty and to protect the bonds to be issued from attack after a reasonable time allowed within which to contest the validity thereof for any cause. Here, it is obvious that the moving force behind this law suit had ample persons from whom to choose as his nominal plaintiff within the peremptive period allowed by law to contest the election. No member of the class allegedly harmed having contested the bond election timely, we therefore disallow the motion to intervene and grant defendant's supplemental motion to dismiss and for summary judgment, it being improper to reach the merits of this case.

■ There are three additional reasons for dismissal. First, as noted, and is uncontested, Ivory Hobbs was neither a registered voter nor a registered property owner when this suit was filed. Consequently, he was not a real party in interest and had no standing to prosecute this suit. Rule 17, F.R.Civ. P.; United States of America v. 936.71 Acres of Land, et al., 418 F.2d 551 (5th Cir. 1969). While plaintiff might contend, under the last sentence of Rule 17 (a), F.R.Civ.P., that the suit was filed timely:

"* * * No action shall be dismissed on the ground that it was not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objections for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Rule 17(a) F.R.Civ.P.

still we must note the Advisory Committee notes to Rule 17 state that the above provision "should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made * * *." 28 U.S.C. Rule 17, Cum.P.P. Notes. We do not find either situation to be present here.

■ Second, it is settled law that an intervenor takes the case as he finds it, 2 Barron & Holtzoff, Federal Practice and Procedure § 593 at 359 (Wright rev. 1961); General Insurance Co. of America v. Hercules Construction Co., 385 F.2d 13 (8th Cir. 1967). Since, as noted above, there is no proper suit be-

---

4. "Significant hardships would be imposed on cities, bondholders, and others connected with municipal utilities if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity. Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932). See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Cf. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Therefore, we will apply our decision in this case prospectively. *That is, we will apply it only where, under state law, the time for challenging the election result has not expired, * * *.*" At page 706, 89 S.Ct. at page 1900 (emphasis added).

fore this Court, plaintiff Tennant has no suit into which to intervene.

Third, January 9, 1970, defendant filed with this Court the transcript of an interview between a member of the Morehouse Parish Sheriff's Department and would-be intervenor Tennant. That transcript reflects that Tennant never consented to have her name used as intervenor or plaintiff in this case. It also reflects that Tennant owns immovable property in Morehouse Parish and therefore is not a member of the class on whose behalf this suit was filed.

Consequently, since we do not reach the constitutional question attempted to be presented, this three-judge Court must be and is hereby dissolved. The order granting substitution of Simpson as plaintiff is recalled, as having been issued improvidently, and is rescinded, and the motions to dismiss and for summary judgment are granted.