**Sadie COOK for self and others similarly situated, et al., Plaintiffs,**

v.

**Charles W. BATES, Individually and as Westchester County Commissioner of Social Services, et al., Defendants.**

**No. 78 Civ. 3600 (RLC).**

United States District Court, S. D. New York.

Nov. 18, 1981.

Alfred J. Vent, M.S.W., C.S.W., pro se.

Samuel S. Yasgur, Westchester County Atty., White Plains, N. Y., for defendant Bates; Kenneth E. Powell, Senior Asst. County Atty., White Plains, N. Y., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Dr. Alvin Yapalater, Alfred J. Vent and Alma Mruz move to intervene and to file an amended complaint in this action over which, in applying the doctrine of federal abstention, this court has retained jurisdiction since April 1979, pending a definitive determination by the state courts. Their motion must be viewed in light of the substantial series of lawsuits litigated by these purported intervenors and the named plaintiff while this action remained dormant.

## PROCEDURAL BACKGROUND

At the core of this controversy lies the Psychiatric Services Center, Inc. ("PSCI"), a provider of methadone treatment and psychiatric care to medicaid patients. Founded and staffed by Dr. Yapalater in June 1974, PSCI received medicaid vendor payments for these services under the New York Medicaid Plan, funded in part by the federal government pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* In October 1977, without granting a hearing to either PSCI or its medicaid patients, the Westchester Department of Social Services terminated these payments upon a finding by defendant Bates that PSCI was not a clinic under contract for such services with a community health board as required by the Regulations of the State Department of Social Services, 18 NYCRR § 505.15(b)(2)(ii)(C).

Soon thereafter, PSCI commenced an Article 78 proceeding in New York State Supreme Court, Westchester County, *PSCI v. Bates*, Index No. 10414/77, which resulted in orders dated September 28, 1978, and December 12, 1978, granting it a hearing. Meanwhile, on August 1, 1978, the effected patients received a hearing to contest the cessation of medicaid vendor payments to PSCI. Alfred J. Vent, Executive Director of PSCI, attended that hearing along with a PSCI attorney.

On August 7, 1978, Sadie Cook, a medicaid recipient and psychiatric out-patient at PSCI, brought the instant action seeking preliminary injunctive relief for herself and others similarly situated from termination of PSCI's government assistance. The thrust of her claim was that the PSCI patients receiving medicaid benefits were entitled to a hearing before the state agency could terminate that facility as an approved vendor.

A hearing was held on the application for preliminary relief on September 5, 1978 and, although not a party, Vent participated as both witness and advocate. Since the propriety of the termination of medicaid funds and the right of the plaintiff patients to be represented at a hearing on that issue were being litigated in the state courts, the doctrine of federal abstention was invoked and the complaint was dismissed. *Cook v. Bates*, 78 Civ. 3600 (S.D. N.Y. October 5, 1978) (Carter, J.) (unreported). However, as instructed by the Second Circuit's ruling of April 5, 1979, *Cook v. Bates*, 603 F.2d 212 (2d Cir. 1979) (unpublished opinion), this court vacated the judgment dismissing the action and retained jurisdiction pending a definitive resolution in the state courts which would obviate the need for litigation of the federal questions involved. 78 Civ. 3600 (S.D.N.Y. May 21, 1979) (unreported).

As a result of the August 1 hearing before the New York State Department of Social Services, the decision not to reimburse PSCI for treating Cook and the other medicaid patients was affirmed. *In the Matter of the Appeal of Sadie Cook.* The

Hearing Officer found, on September 14, 1978, that PSCI was not a provider within the meaning of § 505.15(b)(2)(ii)(C) of the Regulations of the State Department of Social Services because it never entered into a contract with the Westchester County Community Health Board.

The Appellate Division, Second Department heard cross appeals from the Supreme Court's order in PSCI's original Article 78 action compelling a hearing on the validity of revoking medicaid vendor payments for its psychiatric services. *In the Matter of Psychiatric Services Center, Inc. v. Bates*, 73 A.D.2d 935, 423 N.Y.S.2d 690 (2d Dept. 1980). On January 14, 1980, it overturned the Supreme Court directive and dismissed PSCI's action on the ground that PSCI had been automatically dissolved with the expiration of its charter on June 10, 1976, pursuant to § 1009 of the New York Not-For-Profit Corporation Law, and that it had no right to be reimbursed for services rendered to medicaid recipients after its dissolution. 423 N.Y.S.2d at 691. In a memorandum opinion dated December 22, 1980, the New York Court of Appeals affirmed this decision, citing PSCI's failure to qualify for funds under any of the provisions of § 505.15(b)(2)(ii) of the Regulations of the State Department of Social Services and refusing to comment upon its corporate status. *In the Matter of Psychiatric Services Center, Inc. v. Bates*, 436 N.Y.S.2d 702, 52 N.Y.2d 788, 417 N.E.2d 1243 (1980).

PSCI suffered a similar setback in a subsequent lawsuit to compel reimbursement to it for methadone services rendered to medicaid patients. The Supreme Court, Westchester County, dismissed the complaint because of PSCI's lack of corporate existence and incapacity to maintain the proceeding. *In the Matter of the Application of Psychiatric Services, Inc. v. Bates*, Index No. 4624/81 (April 6, 1981).

Meanwhile, both Yapalater and Vent brought a succession of actions in their own names in an effort to remedy the same alleged wrongs. First, Dr. Yapalater commenced an action in federal court in which he claimed that he was being improperly

denied medical assistance reimbursement for psychotherapy rendered by ancillary personnel of PSCI. His complaint was dismissed on the merits because Yapalater was found not entitled to such payments. *Yapalater v. Bates*, 494 F.Supp. 1349 (S.D.N.Y. 1980) (Haight, J.), *aff'd*, 644 F.2d 131 (2d Cir. 1981).

Finally, both individuals initiated lawsuits in Westchester County Supreme Court claiming personal entitlements to the methadone payments sought by PSCI in the action dismissed on April 6, 1981. Yapalater commenced his action on April 10, 1981, *Yapalater v. Bates*, Index No. 6636/81, and Vent filed a complaint on June 4, 1981. *Vent v. Bates*, Index No. 10319/81.

Now, Yapalater, Vent and Alma Mruz, PSCI's secretary, seek by their motion to intervene in these proceedings to relitigate the issues raised and determined in the state court litigations involving PSCI and the class of medicaid patients. Moreover, Yapalater and Vent have separate actions pending in state court in which they seek to litigate these same issues.

Defendants oppose the motion as untimely and on the grounds that it seeks to revive a moribund lawsuit, fails to articulate a clear cause of action, fails to demonstrate a right to intervene and risks prejudice to defendants and confusion of the issues if there is a trial.

## INTERVENOR'S CLAIMS

The three intervenors have filed a proposed amended complaint which alleges that defendants, twenty-three Westchester County and New York State officials, as well as the county and state themselves, have conspired to deprive them of their civil rights in violation of 42 U.S.C. §§ 1983, 1985(3) and 1986. Amended Verified Complaint ¶ 6. As regards these new plaintiffs, this conspiracy was allegedly motivated by a desire to discriminate against a class of mental health professionals and ancillary personnel who seek to provide special "intensive treatment" to methadone dependents. ¶ 7. Although the complaint's subsequent paragraphs are rambling and nearly incomprehensible, it appears that plaintiffs claim that the conspiracy led to the discontinuance of PSCI's medicaid payments ¶¶ 55–8, 65–7, 71, 77, by blocking the rate setting process with respect to that facility. The plethora of allegations includes some which complain of slander, ¶¶ 22–6, 32, and others which cite abuses of the Freedom of Information Act. ¶¶ 72–3.

## DETERMINATION

■ While an application for intervention of right must be "timely," Rule 24(a), F.R.Civ.P., and the instant motion was filed several years after the underlying matter had been pending in this court, mere lapse of time does not render it untimely. *Meyer v. MacMillan Publishing Co., Inc.*, 85 F.R.D. 149, 150 (S.D.N.Y.1980) (Lasker, J.). In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention. *Id.* Since nothing has been done in this litigation but await a resolution of the related state proceedings, defendants will suffer no prejudice from a grant of the motion.

■ However, timeliness is not the sole prerequisite for intervention of right. There must be an existing litigation into which to intervene, *Hobbs v. Police Jury of Morehouse Parish*, 49 F.R.D. 176, 178–9 (W.D.La.1970), because intervention may not be utilized to revive a moribund lawsuit. *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979). An action may attain such status through the court's own initiative when it is clear that the complaint is inadequate as a matter of law. *Coggins v. Carpenter*, 468 F.Supp. 270, 279 (E.D.Pa.1979). *Sua sponte* dismissal is appropriate if there is a clear failure to state a claim upon which relief can be granted. *Id.; Myers v. Davis*, 467 F.Supp. 8, 9 (E.D.Tenn.1978) (dismissing a civil rights complaint which sought to hold a municipality liable in contradiction to the rule of *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)).

■ Like the plaintiffs in *Myers*, Cook and the class of medicaid recipients advance claims which are not redressable under current Supreme Court doctrine. In *O'Bannon*

*v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the Court held that patients have no constitutional right to a hearing to contest the decertification of the facility at which they receive medicaid subsidized care. *Id.* at 2476. The individual recipients have no freedom of choice to remain in an institution deemed unqualified by the government, but only the absolute right to remain in acceptable placements. *Id.* at 2475. Since plaintiffs in the pending case raise issues identical to those decided in *O'Bannon* as noted by both parties in their supporting papers, relief in this court is foreclosed as a matter of law and their complaint must be dismissed pursuant to Rule 12(b)(6), F.R.Civ.P. And, this *sua sponte* dismissal of the underlying action defeats the attempted intervention since that procedural device cannot be used to breathe life into Cook's lawsuit.

Moreover, intervention of right upon the proposed amended complaint would be improper even if the underlying action was maintainable. While the intervenors may have a direct, significant interest in the transaction which is the subject of Cook's action, *see Vazman v. Fidelity International Bank,* 418 F.Supp. 1084 (S.D.N.Y.1976) (Weinfeld, J.), it is impossible to see how "disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." Rule 24(a)(2), F.R. Civ.P. The search for possible disadvantage to the intervenors is complicated by the fact that they make no effort to address the question; there is no discussion of the requirements of Rule 24(a)(2) in any of their papers.

There is no danger that *sua sponte* dismissal of plaintiffs' complaint would preclude the intervenors by *res judicata* or collateral estoppel from bringing their own challenge to PSCI's decertification. *See Securities and Exchange Commission v. Everest Management Corporation,* 475 F.2d 1236, 1239 (2d Cir. 1972). Their only problem in this respect is that a subsequent independent action may be barred by their own previous litigation of all the issues raised in the amended complaint. Furthermore, the patient plaintiffs do not share most of their claims, such as those sounding in slander, those falling under the Freedom of Information Act and those alleging a conspiracy to obstruct PSCI's right to have rates set. This failure to meet the basic demands of intervention of right is a separate and sufficient reason for the denial of the motion to intervene and to file an amended complaint.

For the foregoing reasons, the motion to intervene and to file an amended complaint is denied and plaintiffs' complaint is dismissed *sua sponte.*

IT IS SO ORDERED.