530 A.2d 407

**Blair and Julia CUNNINGHAM, Administrators of the Estate of Kathleen B. Cunningham, deceased; and all others similarly situated, Appellees,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

Supreme Court of Pennsylvania.

Argued May 13, 1987.

Decided Aug. 14, 1987.

Joseph A. Tate, Carl A. Solano, Philadelphia, for appellant.

Richard C. Angino, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court, 353 Pa.Super. 146, 509 A.2d 377, which reversed an order of the Court of Common Pleas of Dauphin County which in turn had revoked certification of a class in a class action proceed-

ing filed against the Insurance Company of North America (hereinafter INA). The class action proceeding had been instituted by Blair and Julia Cunningham, appellees herein, seeking recovery of post-mortem work loss benefits on behalf of their daughter's estate and on behalf of the estates of all other INA insureds who had been fatally injured in automobile accidents after the effective date of the No-Fault Motor Vehicle Insurance Act (Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a)).

The accident responsible for the death of the Cunninghams' daughter occurred in January of 1979, and, more than five years later, in March of 1984, the instant action was filed. In response thereto, INA moved for summary judgment on grounds the claims of the representative plaintiffs were barred by the statute of limitations set forth in the No-Fault Act, 40 P.S. § 1009.106(c), which provides that suits must be brought within, at most, four years from the date of the accident. See *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983) (discussion of statute of limitations governing actions for post-mortem work loss benefits). The trial court determined that the individual claims of the Cunninghams were indeed barred by the statute of limitations but conditionally granted class certification with the proviso that counsel would be required to intervene new class representatives within twenty days. New class representatives were not, however, intervened, and, after the twenty day period and certain extensions granted with respect thereto had expired, the court granted a motion for decertification of the class.[1] Summary judgment in favor of INA was likewise granted.

An appeal was taken to the Superior Court, whereupon summary judgment was vacated and the order revoking certification of the class was reversed. The basis for the Superior Court's action was its determination that the running of the statute of limitations against the Cunninghams'

---

1. Class certification should not have been granted initially in the absence of there being a viable class representative. Pa.R.C.P. 1702(3), (4).

claim had been tolled during a period in which the Cunning-hams had been putative class members in an earlier class action, seeking post-mortem work loss benefits, filed against a group of thirty-one insurance companies, including INA. The latter class action was commenced on November 15, 1979, but, with respect to INA and all but one other in the group of defendant insurance companies, was subsequently dismissed by the trial court on the basis of preliminary objections asserting that the representative plaintiff lacked standing to bring such an action. The Superior Court reversed, holding that adversarial standing was not required, and an appeal was taken to this Court, whereupon on December 30, 1983 the Superior Court's order was reversed and the class action was dismissed as to INA and twenty-nine of the other defendant insurance companies. *Nye v. Erie Insurance Exchange*, 504 Pa. 3, 470 A.2d 98 (1983). The basis for our dismissal of the *Nye* action against INA was that the class representative lacked the necessary standing to assert such a claim since the representative's interests had not been insured by INA.

In holding that the Cunninghams' claim in the instant action was not barred by the statute of limitations, the Superior Court reasoned that the running of the statute had been tolled for a period of approximately four years, to wit, from the time of commencement of the *Nye* action until its final dismissal by this Court. The issue presented by the instant appeal is, therefore, whether tolling of the statute of limitations occurred so as to prevent the Cunninghams' claim from becoming time-barred.

It is well established that upon the filing of a class action, the statute of limitations is normally tolled for all putative plaintiffs in the class. See *Alessandro v. State Farm Mutual Automobile Insurance Co.*, 487 Pa. 274, 279 n. 9, 409 A.2d 347, 350 n. 9 (1979) (members of a class which is subsequently decertified "will not be time barred by the statute of limitations, as it is suspended during the time they are allegedly parties to the class action. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct.

756, 38 L.Ed.2d 713 (1974), [rehearing denied, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974)].")). See also *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 2396, 76 L.Ed.2d 628, 633 (1983) ("The filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' [*American Pipe & Construction Co.,* 414 U.S. at 554, 94 S.Ct. at 766, 38 L.Ed.2d at 727].").

Class actions in Pennsylvania emanate from Pa.R.C.P. 1701 et seq. Tolling of the statute of limitations is discussed in the Explanatory Note to Pa.R.C.P. 1701, following that rule's definition of the term "class action." A "class action" is defined in Pa.R.C.P. 1701 as "any action brought by or against parties as representatives of a class until the court by order refuses to certify it as such or revokes a prior certification under these rules." The Explanatory Note following that definition states,

> This definition becomes important in determining the effect of the commencement of a class action as tolling the statute of limitations as to the members of the class other than the named representatives. It carries into effect the decision of the United States Supreme Court in *American Pipe and Construction Company v. State of Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), in which the Court held that the commencement of an action as a class action suspends the applicable statute of limitations during the interim period from commencement until refusal to certify as to all putative members of the class who would have been parties if the action had been certified as such.

Thus, given that the statute of limitations is normally tolled upon the filing of a class action, there would, if this were a typical case, be no question that the statute was tolled during the period when the Cunninghams were putative class members in the earlier class action against INA. A difficulty arises, however, in that the earlier class action, i.e., the *Nye* case, was one in which the representative plaintiff lacked standing to maintain a suit against INA. The narrow issue presented, therefore, is whether that lack

of standing negated the tolling effect that would normally have accompanied filing of the *Nye* class action.

It is the contention of INA that, because the representative plaintiff in *Nye* lacked standing to pursue claims against INA, lack of standing rendered that class action a nullity, *ab initio*, such that it could not have had the effect of tolling the statute of limitations, and INA asserts that to hold otherwise would be to accord *Nye* an effect that offends constitutional principles of justiciability under Article 5 of the Pennsylvania Constitution. Because we hold, on other grounds, that the *Nye* action was not effective to toll the statute of limitations with respect to actions against INA, we do not reach the constitutional issue. See generally *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978) (resolution of constitutional question should be avoided when there exists a non-constitutional ground for decision).

Statutes of limitations embody important policy judgments that must be taken into account in determining the scope of application of the tolling principle. Those policy judgments include a belief that defendants should be protected against the prejudice of having to defend against stale claims, *Insurance Company of North America v. Carnahan*, 446 Pa. 48, 51, 284 A.2d 728, 729 (1971), as well as the notion that, at some point, claims should be laid to rest so that security and stability can be restored to human affairs, *Schmucker v. Naugle*, 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967). The defense of the statute of limitations is not a technical defense but rather is a substantial and meritorious one, and has been regarded as favored in the law and as advancing the welfare of society. *Id.*

█ We do not believe that the principle of tolling, as it has developed under applicable precedents and under Pa.R. C.P. 1701, supra, contemplates that tolling will occur in cases like the present one, where the lack of standing of the class representative in the prior action, *Nye*, was apparent upon the face of the complaint filed therein. Indeed, the complaint filed in *Nye* clearly stated that the representative

plaintiff was not an insured of INA, and it contained no allegation that any actions attributable to INA caused injury to the representative plaintiff. Under such circumstances, it could not have been more apparent that requirements of standing were not satisfied. See *William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) (plaintiff who is not aggrieved by conduct lacks standing to challenge it); *McMonagle v. Allstate Insurance Co.,* 460 Pa. 159, 331 A.2d 467 (1975) (plaintiff in class action who has not suffered an injury from the challenged conduct of a defendant cannot maintain the class action against that defendant).

In *American Pipe & Construction Co.,* supra, the decision relied upon by *Crown, Cork and Seal Co.,* supra, *Alessandro,* supra, and the Explanatory Note to Pa.R.C.P. 1701, it was inferred that tolling should not occur in cases where the class representative lacked standing. Although *American Pipe & Construction Co.* did not involve a class representative who lacked standing, but rather was a decision invoking the principle of tolling for a class action that had been decertified for lack of numerosity in the plaintiff class, the Supreme Court of the United States stated as follows regarding possible limits on the scope of application of the tolling principle:

> We hold that ... at least where class action status has been denied solely because of failure to demonstrate that "the class is so numerous that joinder of all members is impracticable," the commencement of the original class suit tolls the running of the statute for all purported members of the class ... As the Court of Appeals was careful to note in the present case, "Maintenance of the class action was denied not for failure of the complaint to state a claim on behalf of the members of the class ... *not for lack of standing of the representative,* or for reasons of bad faith or frivolity." 473 F.2d, at 584. (Footnote omitted.)

414 U.S. at 552–553, 94 S.Ct. at 765–66, 38 L.Ed.2d at 726 (emphasis added). Indeed, where a class action has been

dismissed on the basis of lack of standing, considerations which supported invocation of the rule of tolling in other contexts are outweighed by factors particular to the situation presented.

Application of the rule of tolling in *American Pipe* and its progeny was based upon a need to promote efficiency and economy of litigation, recognizing that, unless tolling were afforded, class members would not be able to rely on the existence of the suit to protect their rights. See *Crown, Cork & Seal Co.*, 462 U.S. at 350, 103 S.Ct. at 2396, 76 L.Ed.2d at 633–634. Thus, were it not for tolling, class members might be forced to intervene or take other actions prior to the running of the statute of limitations to ensure that their rights would not be extinguished in the event that class certification were denied.

The potential for abuse of the tolling rule has, however, been recognized since the time of its inception. As Justice Blackmun stated in his concurring opinion in *American Pipe*, "Our decision ... must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." 414 U.S. at 561, 94 S.Ct. at 770, 38 L.Ed.2d at 731. Similarly, Justice Powell, joined by Justice Rehnquist (now Chief Justice) and Justice O'Connor, stated as follows while concurring in *Crown, Cork & Seal Co.*, "It seems important to reiterate the view expressed by Justice Blackmun in *American Pipe* [citing quote, supra] ... The tolling rule of *American Pipe* is a generous one, inviting abuse." 462 U.S. at 354, 103 S.Ct. at 2398, 38 L.Ed.2d at 636.

In the instant case, it is to be noted that counsel for the Cunninghams is the same counsel as filed the class action in *Nye*, and in the *Nye* complaint there appears an admission that counsel's purpose in bringing suit against thirty-one insurance companies even though he represented an insured of only one of them was that he sought to toll the statute of limitations for all carriers, inasmuch as counsel believed that many potential plaintiffs would not otherwise act upon

their rights. We regard such an action as a clear abuse of the goals of class action procedures. The procedures do not exist to sanction what would be regarded by many as a course of officious intermeddling on the part of counsel, who, motivated by concern for plaintiffs who would not otherwise file suits, has embarked on a course of initiating litigation on behalf of those who have slept on their rights. Indeed, this case presents a most compelling example of tactics employed to subvert the legislative intent embodied in the statute of limitations, and the rules governing tolling will not be extended to give effect to such tactics.

It is argued that, for purposes of tolling, it should make no difference whether the representative plaintiff had standing to maintain a class action, in that even if standing were lacking the defendant would be put on adequate notice of the existence of claims against him. See *Crown, Cork & Seal Co.*, 462 U.S. at 353, 103 S.Ct. at 2397, 76 L.Ed.2d at 635 (*one* of the purposes of limitations periods is to assure prompt notice to defendants of the need to preserve evidence and gather necessary witnesses). Such an argument, however, rests upon the faulty premise that the legislature, in enacting statutes of limitations, intended merely to assure that defendants would be given notice, within a given time frame, that there are individuals who *might*, if they were aware of their rights and desirous of pursuing them, bring actions against such defendants.

As stated in *Crown, Cork & Seal Co.*, 462 U.S. at 352, 103 S.Ct. at 2397, 76 L.Ed.2d at 635, "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights...." When a complaint is filed by one who, upon the face of the pleadings, is patently without standing, it cannot be said that the defendant has been given notice of an *actual* adverse claim; rather, the defendant has been advised only of the possibility of such a claim, a fact of which the defendant may well have been aware even in the absence of a complaint having been filed. In such a case, the defendant has been given notice only of a palpably non-justiciable

claim, for, under the precedents governing standing, discussed supra, it is clear that the action must be dismissed. The *Nye* case constitutes a prime example, inasmuch as the trial court in ruling on preliminary objections to the complaint determined from the outset that, on the face of the pleadings, the representative plaintiff lacked standing to maintain suits against insurance companies with which his interests had not been insured.

Providing notice of the mere possibility of an actionable claim, by filing a patently non-justiciable class action suit, cannot be regarded as sufficient to toll the statute of limitations. To hold otherwise would be to render the statute of limitations so diluted in its effect as to skirt the clear legislative policy expressed therein, and would encourage plaintiffs to sleep on their rights in the hope that officious intermeddlers, who lack standing, will institute actions on their behalf.

■ The argument has been advanced that, by not applying the tolling principle in the context of this case, the utility of class action suits will be completely vitiated, rendering it necessary in every case for putative plaintiffs to intervene or file their own actions because of an inability to rely on the standing of other representative plaintiffs. Such an argument misconstrues the impact which this decision will have upon the status of class action litigation, for the most direct effect will be to discourage plaintiffs from filing suits in cases where they lack standing, thus reducing the incidence of cases where standing may be questioned. Only in a comparatively small number of cases will it be necessary, therefore, for purported class members to take actions to ensure that their rights are not extinguished as a result of apparent defects in the standing of representative plaintiffs. Further, it should be emphasized that the present case is one where the lack of standing of the representative plaintiff in *Nye* was plainly discernible on the face of the pleadings, and where the trial court in *Nye* ruled from the outset, at the preliminary objections stage,

that standing was absent. Under these circumstances, to accord *Nye* a tolling effect would not be warranted.

Order of the Superior Court reversed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent.

Appellant, Insurance Company of North America (INA), framed the issue it presented to this Court as follows:

Did the filing of a class action over which no court had jurisdiction because the named plaintiffs lacked standing to sue nevertheless toll the statute of limitations for claims filed after the statute otherwise would have run?

The thrust of appellant's argument is that lack of standing in a class action proceeding goes to the essence of a court's jurisdiction and that lack of standing renders a class action a nullity from the outset. This is *not* the law of this Commonwealth. In *Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 602, 207 A.2d 861, 863 (1965), this Court specifically rejected a challenge to the lower court's *jurisdiction* to hear a case on the basis of the plaintiff's purported lack of standing, stating simply: "[w]hether a plaintiff has standing ... does not involve a question of jurisdiction." *See also Jackson v. Centennial School District*, 509 Pa. 101, 501 A.2d 218 (1985) (Larsen, J., dissenting) (discussing confusion engendered by use of term "jurisdiction" whenever a court fails to entertain an action for any reason). On this ground alone, I would have dismissed this appeal as having been improvidently granted.

Further, appellant and the majority accord undue significance to the dicta in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *reh. denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974), from which the majority infers that tolling of the statute of limitations "should not occur in cases where the class representative lacked standing." Maj. op. at 492.

The source of this "rule" of law, as cited by the Court of Appeals in *Utah v. American Pipe & Construction Co.*, 473 F.2d 580 (9th Cir.1973), is *Hobbs v. Police Jury of Morehouse Parish*, 49 F.R.D. 176 (W.D.La.1970). The court in *Hobbs* refused to permit untimely intervention in a class action suit where the named representative lacked standing in his own right and as a member of the class he purported to represent to challenge the issuance of municipal bonds. The *Hobbs* court found that this cause of action was governed by a *peremptive* period of limitation, which period could not, under any circumstance, be tolled or suspended.[1] Peremptive periods of limitation were distinguished by the *Hobbs* court from *prescriptive* periods in this way:

'The difference between prescription and peremption is that the former simply bars the remedy whereas, in the latter, *time is made of the essence of the right granted.*'

. . . . .

Had this case dealt with a simple prescriptive period, we may have been inclined to hold that institution of a class action by an improper party interrupted the running of prescription so as to allow a later, proper plaintiff with appropriate standing, to prosecute the suit.

1. The Louisiana Constitution provides, in pertinent part:

If the validity of any election, special tax or bond issue authorized or provided for, held under the provisions of this section, is not raised within the sixty (60) days herein prescribed, the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters.

La.Const. Art. 14, § 14(n).

Compare the applicable statute of limitations set forth in our No-fault Act as follows:

If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced not later than two years after the last payment of benefits.

40 P.S. § 1009.106(c)(1) (repealed).

49 F.R.D. at 179 (emphasis added).[2] Such precedent does not establish a firm foundation for the majority's holding today.

We must keep in mind that our own rules of procedure define a class action as "any action brought by or against parties as representatives of a class *until* the court by order refuses to certify it as such or revokes a prior certification." Pennsylvania Rules of Civil Procedure Rule 1701 (emphasis added). This definition tracks the language of *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), where this Court stated that "[t]he class is in the action until properly excluded." Explanatory Note to Rule 1701. Appellees herein, Blair and Julia Cunningham, were unnamed members of the class involved in *Nye v. Erie Insurance Exchange*, 504 Pa. 3, 470 A.2d 98 (1983),[3] and I would hold that the statute of limitations was

**2.** In *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 455 A.2d 101 (1982), this Court drew an analogy between the no-fault statute of limitations and the limitations on traditional tort actions for personal injuries. As such, the limitations period set forth in the No-fault Act can be considered a "pure" statute of limitations (or a "prescriptive" limitations period) and not a "special" (or "peremptive") statute of limitations. In *Metropolitan Edison Co. v. Pennsylvania Public Utility Commission*, 62 Pa.Commw. 460, 437 A.2d 76, 84 (1981) (Petition for Allowance of Appeal denied February 23, 1982), Commonwealth Court aptly described these terms as follows:
> A "pure" statute of limitations operates only to bar a remedy, and does not affect the substantive existence of a legal right or power. A special limitation, by contrast, is an integral, substantive element of the right or power in question; the right or power cannot exist in scope beyond the special limitation.

**3.** Nye's complaint alleged:
> The class of plaintiffs includes all previously employed Pennsylvania residents who were insured by any of the defendants under No-Fault insurance coverage and who sustained a fatal injury within the past two years or whose estate or relative received any no-fault payments whatsoever as a result of decedents' death during the past two years and their executors, administrators, relatives, etc.

Nye's Class Action Complaint at 6. *Nye v. Erie Insurance Exchange, supra.* Appellees brought the instant action as administrators of the estate of their daughter, Kathleen Cunningham, who died as the result of a motor vehicle accident occurring on January 25, 1979. At the time of her death, Kathleen was a Pennsylvania resident, who was employed as a schoolteacher, and was a named insured on a no-fault automobile insurance policy issued by INA.

tolled as to their cause of action from the date the class action complaint in *Nye* was filed and *until* this Court found that Nye lacked class action standing with respect to all defendants except Erie Insurance Exchange on December 30, 1983.

The purposes to be served by limitations periods and the tolling principle in class actions would not be violated by extending the tolling principle to this case. The validity of class members' claims depends on their inherent merits; it does not rise and fall with their putative representative. The fact that Nye lacked standing meant only that he could not represent those class claims, not that no one could, or that his individual claim or the claims of his class were invalid. Appellant had notice sufficient to determine both the subject matter and size of the prospective litigation on the day that the complaint was filed in *Nye*. Contrary to what the majority finds, it was *not* patently clear from the face of Nye's complaint that Nye lacked standing to bring a cause of action against appellant herein. Standing has been referred to as one of "the most amorphous concepts in the entire domain of public law." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Two Superior Court judges found that Nye *did* have standing to pursue the action against all defendant insurance companies, including INA. *Nye v. Erie Insurance Exchange*, 307 Pa.Super. 464, 453 A.2d 677 (1982), *rev'd*, 504 Pa. 3, 470 A.2d 98 (1983). Although this Court unanimously determined that Nye lacked standing, this was an arguable legal issue which took four years to resolve.

In the interim, appellees, members of the class in *Nye*, properly refrained from filing an individual action, thereby promoting the efficiency and economy of litigation envisioned by our class action rules. The result of the majority's position, on the other hand, will be to encourage the filing of numerous duplicative complaints across the Commonwealth as unnamed members of a class seek to preserve their rights in the event that the class action is dismissed or

decertified for any reason other than lack of numerosity, commonality, or the ability of the representative to protect the interests of the class.

The majority takes note of the fact that counsel for the appellees herein "is the same counsel as filed the class action in *Nye*," maj. op. at 493, and concludes therefrom that counsel has acted as an officious intermeddler, abused the goals of class action procedures, and employed subversive tactics. Maj. op. at 493–496. I disagree. I would note for the record that Pennsylvania insurers not only failed to inform their insureds that work loss benefits were available under the No-fault Act,[4] Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101–1009.701, since repealed, but also contested payment of these benefits in numerous court actions and appeals. *See, e.g., Freeze v. Donegal Mutual Insurance Co.,* 504 Pa. 218, 470 A.2d 958 (1983) (estate of victim entitled to work loss benefits); *Klopp v. Allstate Insurance Co.,* 334 Pa.Super. 162, 482 A.2d 1133 (1984) (decedent on total disability entitled to work loss benefits); *Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. 322, 467 A.2d 345 (1983) (work loss benefits must be paid in lump sum), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985); *Shomper v. Aetna Life & Casualty Co.,* 309 Pa.Super. 97, 454 A.2d 1101 (1982) (earlier decisions regarding work loss benefits were to be applied retroactively and such benefits were payable to decedent on welfare at time of accident); *Minier v. State Farm Mutual Automobile Insurance Co.,* 309 Pa.Super. 53, 454 A.2d 1078 (1982) (retired person on pension is entitled to work loss benefits). Thus, counsel's actions were a proper attempt to prevent clear abuses of the No-fault Act by the insurance industry on behalf of the industry's insureds.

---

**4.** For example, appellees in the instant action filed an affidavit in which they stated "[w]e were not told that our decedent's estate had a claim for No-fault work loss benefits." Reproduced Record at 273a. They also stated that they were originally informed of this right to work loss benefits by an attorney *not* involved in the *Nye* case who referred them to their present counsel.