## Patton et al. *v.* Commonwealth Trust Co., Executor, et al.

*Equity—Bill—Averments—Ignorance — Stale claim — Death of party—Laches—Contract—Fraud—Duty to investigate—Sale of corporate stock.*

1. Where ignorance of rights or wrongs is relied on to account for laches, this fact must be plainly alleged in a bill in equity to set aside a sale on account of fraud.

2. A general averment of plaintiff's ignorance of his rights is insufficient; he must allege and prove why he was so long in ignorance and the means used to keep him so, that the facts could not have been discovered by the exercise of due diligence, and must acquit himself of all knowledge of facts which would put him on inquiry.

3. A bill in equity to set aside a sale of stock on the ground of fraud, is properly dismissed, where the evidence shows plaintiff had entered into an agreement with defendants a number of years before the bill was filed, to purchase the stock in question, that it was delivered ten months later, that plaintiff, prior to its delivery, and subsequent thereto, and long before the bill was filed, had ample opportunity to ascertain the value of the stock if he had used due diligence.

4. The rule that equity will not enforce a stale claim is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscure by time as to render the ascertainment of the exact facts impossible.

Argued October 5, 1922.  Appeals, Nos. 6, 2, 3, and 4, May T., 1923, by plaintiffs, from decrees of C. P. Dauphin Co., Equity Docket, Nos. 672, 673, 686 and 674, dismissing bills in equity, in case of J. Hervey Patton et al. v. Commonwealth Trust Co., Executor of William T. Hildrup, Jr., deceased, D. E. Tracy, Wm. P. Starkey et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Bills in equity to set aside sale of stock, and for accounting.  Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Bills dismissed: 25 Dauphin Co. R. 316.  Plaintiffs appealed.

*Errors assigned,* inter alia, were decrees, quoting them.

*J. W. Swartz,* of *Swartz, Swartz & Swartz,* with him *Beidleman & Hull,* for appellant.

*Owen J. Roberts* and *Charles L. Bailey, Jr.,* with them *William S. Snyder* and *Charles H. Bergner,* for appellees.

OPINION BY MR. JUSTICE WALLING, January 3, 1923:

These four cases against the same defendants were argued together and, as they involve the same questions, we will so treat them. They are companions to the case of Kinter v. Commonwealth Trust Co., 274 Pa. 436, where we held plaintiff's bill properly dismissed on the ground of laches. The bill was filed, in each of the five cases, to set aside the sale of the respective plaintiffs' stock in the Harrisburg Pipe & Pipe Bending Company, to William T. Hildrup, Jr., et al., on the ground of fraud. In March, 1915, Hildrup, an executive officer of the corporation, secured one-year options on the stock of the respective plaintiffs, by virtue, inter alia, of a circular letter sent to all stockholders; and nine or ten months thereafter closed the option contracts by accepting and paying for the stock. As the general features of the five cases are similar it is needless to restate here the facts appearing in the Kinter case; our main question is, whether there is a controlling difference between the instant cases or any of them and that case. With this in view we have carefully examined the four records now before us and, while some of the defects pointed out in the Kinter case have been cured here by amendments to the bills, others have not, and, on the vital question of laches, there is no crucial difference.

In the bill of J. Hervey Patton, laches appears more clearly than in the Kinter case. Patton, residing in Harrisburg, was a charter member of the corporation and one of its two largest stockholders (he and Hildrup each owning 4,004 shares of the par value of $50 each), and, more, Patton was a director and salaried officer of the corporation. With all he knew, and had the opportunity of knowing, of the corporation and its business, it is unthinkable that he had no notice or means of knowledge, for over five years, of the alleged fraud perpetrated upon him in the transfer of his stock to Hildrup. The other three appellants (plaintiffs), viz: Waldo Newcomer, Ernst Schmeisser and Florence Basshor, resided

in Baltimore and, while we called attention to the local residence of Kinter, as we have here to that of Patton, it is not a controlling circumstance. The other facts and circumstances to which reference is made in the Kinter case are present in each of the instant cases, except that one or two of the plaintiffs deny having seen the annual statement for 1915, prior to the transfer of the stock, but such statement could have been had for the asking. True, it is averred that Patton, as the innocent agent of Hildrup, made certain false representations to the other appellants to induce them to execute the options, but that was early in March, 1915, and they had about ten months thereafter to ascertain the truth of such representations before they actually parted with their stock.

The conditions at the plant, when the options were given in March, 1915, and from that time on until and long after the actual transfer of the stock, were such as to warn all interested parties that munitions were being made there in large quantities. In fact the plant ordered $140,000 worth of lathes for war work in February, 1915, and early that year not only erected an addition to the plant for that purpose but began the delivery of shells.

The mere fact of taking options on the stock at par, when, just prior to that time, the corporation was considered insolvent and its stock worthless, was itself a cogent circumstance that war contracts or others of equal importance, were in sight. The known facts and circumstances existing prior to the actual transfer of the stock were such as should have led to an investigation, yet none was made by either appellant. Even after the stock was delivered, not a step was taken to ascertain if appellants had been defrauded until Patton claims to have accidentally discovered, in June, 1920, that the lathes had been ordered in February, 1915; and he avers that later he learned the company had secured a large war contract the same month, that is, before the options were taken, and which fact Hildrup concealed. It was this alleged discovery which led to the present litigation.

Each appellant avers ignorance of this first war contract until the summer of 1920, yet not one avers the making of any effort whatever to discover it. This, under the circumstances disclosed, was not the due diligence which the law requires to excuse laches. The language of Mr. Justice MITCHELL in Smith v. Blachley, 198 Pa. 173, 180, (reaffirmed in Dalzell v. Lewis, 252 Pa. 283, 289), is applicable here, viz: "The gradual leaking out of the circumstances and the gossip and suspicions of others started an investigation by plaintiffs, which the most ordinary prudence would have prompted at the beginning, and which would then have either foiled the scheme or led to its discovery and the trial of this action while all the witnesses were alive and the matters fresh in their memories"; as is also that of Judge BREGY, adopted by this court, in Taylor v. Coggins, 244 Pa. 228, 231, viz: "Laches is not excused by simply saying: 'I did not know.' If by diligence a fact can be ascertained, the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him.'" See Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136. In 21 C. J., p. 402, the rule is thus stated: "Where ignorance of rights or wrongs is relied on to account for laches, this fact must be plainly alleged in the bill. A general averment of plaintiff's ignorance of his rights is insufficient; he must allege why he was so long in ignorance and the means used to keep him so, that the facts could not have been discovered by the exercise of due diligence, and must acquit himself of all knowledge of facts which would put him on inquiry." None of the plaintiffs' bills sufficiently avers facts to show the fraud could not have been promptly discovered by the exercise of due diligence. "The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence

the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of the facts. Knowledge of facts which would put a person of ordinary prudence and diligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose": 5 Pomeroy's Eq. Jur., section 27.

Hildrup, the maker of every alleged fraudulent statement, died in May, 1920, so neither his estate nor its co-defendants could have the benefit of his knowledge or of his testimony. This placed the defendants at a decided disadvantage, and, with the long and not satisfactorily explained inaction and delay, called for the dismissal of plaintiffs' bills. "The rule [that equity will not enforce a stale claim] is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible": from opinion of Chief Justice FULLER in Hammond v. Hopkins, 143 U. S. 224, 250. We refrain from a further discussion, as it would be largely a repetition of what appears in the Kinter case.

Each of the four appeals is dismissed at the costs of the respective appellants.