533 A.2d 1029

**James J. BICKFORD and Louise Bickford, H/W, Appellants,**

**v.**

**Raymond JOSON, M.D., and Mercy Catholic Medical Center Fitzgerald–Mercy Division.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1986.

Filed Oct. 15, 1987.

Reargument Denied Dec. 8, 1987.

James Beasley, Philadelphia, for appellants.

Lori Olitsky Strauss, Philadelphia, for Joson, appellee.

Thomas J. Ericson, Havertown, for Mercy, appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

CAVANAUGH, Judge:

In this claim by appellants, James J. and Louise Bickford, for personal injuries on the basis of medical malpractice, the parties by cross motions for summary judgment, brought before the trial court the issue of the statute of limitations. After consideration of the record, the court found appellants' suit to be barred by the running of the statute of limitations and dismissed. We affirm.

The claim of malpractice is based on the assertion that the appellees, Raymond Joson, M.D., and Mercy Catholic Medical Center, failed to perform appropriate diagnostic studies, particularly a myelogram within twenty-four hours (or so) of appellant's hospitalization. A myelogram is a diagnostic study which consists of roentgenography of the spinal cord after injection of a contrast medium. Mr. Bickford was hospitalized after he fell down a flight of stairs at his residence on March 23, 1976 and suffered quadriplegia. It is appellants' contention that had the myelogram been timely done, a decompressive laminectomy would have been indicated and performed with the result that his quadriplegia would have been alleviated or reversed.

In order to determine whether or not the trial court erred in granting summary judgment on the basis of the statute of limitations, we must properly focus on the posture of the case before the trial court. That is, in order to grant summary judgment, the court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). Thus, for summary judgment purposes, appellees must concede that appellants have stated facts which support a cause of action. The efficacy of the claim and the facts which appellants claim in support of it must be unchallenged. The complaint, in general terms, alleges close to twenty averments of negligence and malpractice. The gist of the cause of action, however, has been reduced by appellants to a simple claim that a substantial cause of Mr. Bickford's paralysis is the failure of Dr. Joson to perform a myelogram. It is conceded that appellant's fall down a flight of stairs in his house on March 23, 1976 caused him to become paralyzed, but, it is claimed, if a myelogram had been performed very soon after his admission to Mercy Catholic Medical Center a decompressive laminectomy may have been performed reversing the paralysis. Since Mr. Bickford left the care of appellees, Joson and Mercy Catholic Medical Center, upon his discharge from the hospital on May 17, 1976, the negligence or malpractice in failing to perform the myelogram may fairly be stated to have oc-

curred at least during the period of admission from March 23 to May 17, 1976. Suit was not commenced until May 2, 1982.

The efficacy of limitation laws has won unequivocal judicial approval. For example, our highest court has recognized that the defense of the statute of limitations is not a technical defense but is substantial and meritorious.

> "Statutes of limitation are vital to the welfare of society and are favored in the law.... They promote repose by giving a stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence.... Mere delay, extended to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

*Schmucker v. Naugle,* 426 Pa. 203, 204, 231 A.2d 121, 123 (1967), *quoting* from *United States v. Oregon Lumber Co.,* 260 U.S. 290, 299–300, 43 S.Ct. 100, 103, 67 L.Ed. 261 (1922). Further, it has been stated that "The purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728, 729 (1971); *Ulakovic v. Metropolitan Life Ins. Co.,* 339 Pa. 571, 575–576, 16 A.2d 41 (1940). *See also Cunningham v. Insurance Co. of North America,* 515 Pa. 486, 530 A.2d 407 (1987).

■ The Bickfords' argument on appeal is that, although the two year statute of limitations (42 Pa.C.S.A. § 5524(2)) would ordinarily be a bar to this action for injuries to the person, its stricture is inapplicable since appellants are entitled to invoke the "discovery rule" in order to extend the period of limitations. A growing line of Pennsylvania cases have alluded to this rule in deciding the applicability of the statute of limitations. The rule found its roots in the seminal case of *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) which held that "(t)he injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers,* 397 Pa. at 290, 154 A.2d at 792. The law became more explicit in *Anthony v.*

*Koppers Co., Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980), rev'd on other grounds, 496 Pa. 119, 436 A.2d 181 (1981). *Anthony* set forth three independent phases of knowledge which must be reasonably discoverable before the statutory period commences:

(1) knowledge of the injury;

(2) knowledge of the operative cause of the injury; and,

(3) knowledge of the causative relationship between the injury and the operative conduct.

The discovery rule has been more simply stated in *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (en banc), Petition for Allowance of Appeal denied April 30, 1984, wherein the court reduced the level of reasonable knowledge to (1) knowledge that one has been injured; (2) that his injury has been caused by another party's conduct. Although *Cathcart* was an asbestos ("creeping disease") case, application of the *Cathcart* test to medical malpractice cases was recently espoused in *Groover v. Riddle Memorial Hospital*, 357 Pa.Super. 420, 516 A.2d 53 (1986). Most importantly, our Supreme Court has characterized the discovery rule components simply as the inability despite reasonable diligence to determine "the injury or its cause." *Pocono International Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 86, 468 A.2d 468, 471–472 (1983). *See also Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987).

We conclude that even when discovery rule principles are applied to the present case, appellant's claim is barred. As to the knowledge that he has been injured, it is clear that the injury—failure to alleviate or reverse a paralysis—was obvious to appellant who had knowledge of the continued gravity of his paralysis with only slight improvement from the time he left the hospital. Appellant does not argue otherwise. Appellant's brief at P. 13. However, Bickford argues that he did not, in fact, have any information to apprise him that a myelogram pointing to possible relief from his paralysis might have been performed until, at the earliest, August of 1981 when in consultation with a physician, Dr. Boor, the possibility of his undergoing myelogra-

phy was for the first time discussed with appellant.[1] The argument, then, is that Bickford could not reasonably learn within two years of the failure of appellees to perform a myelogram which was a substantial contributing factor to his continued state of paralysis. However, given the presumed validity of appellants' claim, we fail to see that there was any barrier to the discovery of the operative cause of the injury, i.e., the failure to perform myelography. The facts supporting the claim were known or at least knowable from the time of the hospitalization—when no myelogram was performed. The essence of appellants' cause of action is that appellees did not conform to community standards of medical care and it must follow that consultation with an attorney would have disclosed to Bickford the existence of his legal claim. Stated otherwise, at the time of the tort alleged by appellant, all the facts to support the claim were known or reasonably knowable to him. Appellant does not argue that he is excused because of any obscurity of his legal theory of malpractice. Indeed, to so argue would be inconsistent with the standard of reasonable medical care. Nor does he argue that prudent legal inquiry would not have disclosed the existence of his claim at any time following the alleged malpractice. Indeed, in an era of complex and sophisticated legal rights and the general availability of legal services, the duty to make legal inquiry within two years of the injury is wholly reasonable. Under these circumstances, we find the words of an analogous case in the United States Supreme Court to be pertinent:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the

---

**1.** There is no evidence that Dr. Boor or any other physician or health care personnel offered any advice that a myelogram should have been performed at the time of the post-accident admission and it appears that appellant did not learn of the possibility of the present cause of action until after counsel was consulted in September, 1981.

plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.

.        .        .        .        .

We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. If there exists in the community a generally applicable standard of care with respect to the treatment of his ailment, we see no reason to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be imcompetently advised or the medical community may be divided on the crucial issue of negligence, as the experts proved to be on the trial of this case. But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is

otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury. *United States v. Kubrick*, 444 U.S. 111, 122, 123, 100 S.Ct. 352, 359, 360, 62 L.Ed.2d 259 (1979) (footnotes omitted).[2]

Pennsylvania law is not to the contrary. In *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983), we said:

> Thus, once the patient is aware or should reasonably have become aware that medical treatment is causing him personal injury the statute begins and the prospective plaintiff is required to begin doing those things for which the statute of limitations specifically provides time: "an opportunity to select and consult with a lawyer, investigation, initiation of suit, discovery, joinder of additional parties, etc." *Keating v. Zemel*, 281 Pa.Superior Ct. 129, 134 n. 4, 421 A.2d 1181, 1184 n. 4 (1980). It is during this two year period that the medical malpractice plaintiff, like any other plaintiff pursuing any other legal claim, makes the decision whether or not to pursue any legal rights he may possess.

*DeMartino*, 313 Pa.Superior Ct. at 501, 460 A.2d at 300.

■ Similarly, under the Pennsylvania discovery rule, there is no requirement that the plaintiff reasonably discover that his injury has been caused by the *negligent* conduct of another. *Anthony v. Koppers, supra; DeMartino v. Albert Einstein Medical Center, supra; Groover v. Riddle Memorial Hospital, supra; Held v. Neft*, 352 Pa.Super. 195, 507 A.2d 839 (1986).

To be sure, on occasion, our court has found that summary judgment was improperly entered in a discovery rule case. In *Petri v. Smith*, 307 Pa.Super. 261, 453 A.2d 342 (1982) a panel decided that although the mother of a child allegedly injured at birth knew well within two years of the injury (physical and mental retardation), and the operative causes (failure to perform a caesarean section and improper

---

**2.** *Kubrick* involved a statute of limitations defense to a suit under the Federal Tort Claims (Act) 28 U.S.C. § 2401(b) [28 U.S.C.S. § 2401(b) ].

administration of drugs) there was a sufficient dispute as to the third prong of the *Anthony* text, i.e., knowledge of the causative relationship between the injury and the operative conduct. It appears that *Petri* at least comes close to improperly concluding that the plaintiff must be charged with knowledge that the *negligent* conduct of another must have caused the injury. Nevertheless, the conclusion was simply that, under all the facts, whether or not the plaintiff acted with reasonable diligence in discovering the cause of the birth defect was properly a question for the jury.

Unlike *Petri* we see no basis for a jury question in the present matter. In effect, the jury would have to be told that the plaintiff knew of his injury and that his claim as to malpractice—a breach of a duty of due care—was knowable and, in fact, was pursued by a lawsuit as soon as plaintiff sought counsel. Under the facts, the only reasonable conclusion is that counsel should have been sought sooner, i.e., within two years of the date of the claimed malpractice. We think that the facts do not permit an extension of the statute beyond two years since the purpose of the limitation is precisely that—to provide a reasonable period of time so that an injured person may assess their legal rights, seek advice and pursue his claim—but at the same time protect adverse parties from stale claims. This conclusion follows the reasoning of our Supreme Court in *Pocono International Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983) stated:

> As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. *Walters v. Ditzler*, 424 Pa. 445, 450–451, 227 A.2d 833, 835 (1967); *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981); *Med–Mar, Inc. v. Dilworth*, 214 Pa.Super. 402, 257 A.2d 910 (1969). Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of

limitations, *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 204 A.2d 473 (1964), *Bell v. Brady*, 346 Pa. 666, 31 A.2d 547 (1943); even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

The "discovery rule" is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause. (Emphasis in original.)

The court concluded:

We hold, therefore, that the "discovery rule" exception arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were *actually* ascertained within the period. (Emphasis in original.)

468 A.2d at 471–472.

Order affirmed.