**Dorothy HOLDER and John Holder**

v.

**ELI LILLY AND COMPANY.**

Civ. A. No. 88–4765.

United States District Court,
E.D. Pennsylvania.

March 23, 1989.

Francis A. Ferrara, Media, Pa., for plaintiffs.

Edward W. Madeira, Jr. and Nina M. Gussack, Philadelphia, Pa., for defendant.

### OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff Dorothy Holder ("Holder") claims damages for injuries as a result of her *in utero* exposure to the drug diethylstilbestrol ("DES") allegedly manufactured by defendant. Plaintiff John Holder, her husband, claims damages for loss of consortium. Defendant has moved for summary judgment on the ground that plaintiffs' action is barred by the applicable statute of limitations.

Holder and her husband began suit on November 4, 1987. Holder alleges that her mother took DES while pregnant with her, that exposure to the drug *in utero* deformed Holder's uterus, and that this in turn put

her at risk during her own pregnancy of premature delivery and other complications.

It is undisputed that in late 1982, about five years before plaintiffs filed suit, Holder's gynecologist, Dr. Johnson, determined after a visual internal examination that Holder had an enlarged cervical hood, and after a pap test, that she had abnormal cervical cells that put her at increased risk for cancer. After obtaining Holder's mother's medical records, Dr. Johnson told Holder that her cervical abnormalities were the result of her exposure to DES *in utero.*

According to Holder, Dr. Johnson did not then tell her of the risk that her exposure to DES might have deformed her uterus as well as her cervix, and that a deformed uterus might mean that she would be unable to carry a pregnancy to term. Nor did he then order the diagnostic test called a hysterosalpingogram to determine whether Holder's uterus was in fact deformed. Holder testified that she did not learn of the risk of a deformed uterus, or of the fact that she had a deformed uterus, until December, 1986, when Dr. Johnson explained the risk, ordered the diagnostic test, and made the diagnosis.

Pennsylvania's two year personal injury statute of limitations applies in this case. *See* 42 Pa.Cons.Stat.Ann § 5524(2). John Holder's suit for loss of consortium is derivative of Holder's suit, and therefore takes the same statute of limitations. The limitations period ordinarily starts to run when the tortious act causes an injury. *Pocono Int'l Raceway v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468, 471 (1983). Since DES causes congenital defects, the statute of limitations in DES cases would ordinarily start to run at birth. However, under the "discovery rule," if the nature of the injury is such that the plaintiff cannot discover it by the exercise of reasonable diligence, the statute of limitations is tolled until the plaintiff knows, or through the exercise of reasonable diligence should have known, of the injury and its cause. *Id.; Urland v. Merrell–Dow Pharmaceuticals,* 822 F.2d 1268, 1271 (3d Cir.1987) (applying Pa. law).

Defendant argues that the limitations period began to run in 1982, as soon as Holder learned that she had been exposed to DES and that it had injured her by creating cervical abnormalities. Plaintiff contends that the limitations period did not begin to run until December, 1986, when Holder allegedly first learned of the specific risk of a deformed uterus.

It is settled law in Pennsylvania that when a plaintiff discovers that he has suffered *any* injury from tortious conduct, the limitations period begins to run for *all* injuries caused by that tortious conduct, including not only those other injuries that are not yet discovered, but also any injuries from complications that have not yet developed.

In *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), the plaintiff first discovered that he had asbestosis, and only later developed the arguably different disease of pleural thickening. The court held that the limitation period began when the plaintiff discovered his asbestosis, and that a new limitation period did not start when he discovered his pleural thickening, because there was no new negligent act by the defendants. The court said:

> ... in Pennsylvania a plaintiff's claims for *all* injuries arising out of the same tortious conduct of a defendant must be brought within two years of the time that the plaintiff knows, or in the exercise of reasonable diligence should know, of his initial injury and that the injury was caused by someone's wrongful conduct.

*Id.* 471 A.2d at 507 (emphasis in original).

Similarly, in *Staiano v. Johns–Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681, 688 (1982), which involved similar facts, the court held: "A new limitation period does not start each time a new disease develops from the same tortious conduct of the defendant." *See also Shadle v. Pearce,* 287 Pa.Super. 436, 430 A.2d 683 (1981) (a new limitation period did not start when the plaintiff suffered a devastating complication a year after his operation for a heart infection caused by the defendant's negli-

gent dental procedure); *Doe v. Johns–Manville Corp.*, 324 Pa.Super. 469, 471 A.2d 1252 (1984) (adhering to the same rule, in the context of a declaratory action in an asbestos case, where the plaintiff had developed a minor condition that might or might not lead to asbestosis later, but criticizing the rule's tendency to clog the courts with minor cases and to preclude full relief for plaintiffs).

In light of this consistent line of Superior court cases, I decline to speculate that the Pennsylvania Supreme Court would reach a different result in this case. I am therefore bound to hold in the case at hand that the limitations period began running when Holder first learned that she had been injured in some way by exposure to DES, that is, when she learned that DES had caused her cervical abnormalities.

Because it is undisputed that Holder learned of her cervical abnormalities well before the two year limitation period, plaintiffs' suit is time-barred as a matter of law. I will therefore grant defendant's motion for summary judgment.