633 A.2d 1195

Shirley COCHRAN, Administratrix of the Estate of
William A. Cochran, Deceased, and Shirley
Cochran, In Her Own Right, Appellant,

v.

GAF CORPORATION, Raymark Industries, Celotex Corporation, Successor–In–Interest to Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation, Keene Building Products Corporation, Eagle–Picher Industries, Inc., Owens–Corning Fiberglas Corporation, Owens–Illinois, Inc., Garlock, Inc., A–Best Products Company, Pittsburgh Corning Corporation, Armstrong World Industries, Inc., Nicolet Industries, Inc., Successor–In–Interest to Keasby & Mattison, H.K. Porter Company, Inc., Combustion Engineering, Successor–In–Interest to Dietrich Company, Fibreboard Corporation, General Refractories Company, Inc., A.P. Green Refractories Company, Carey–Canada, Inc., Successor–In–Interest to Carey Canadian Mines, Ltd., and Quebec Asbestos Corp., Anchor Packing Company, Universal Refractories, Division of Theim Corporation, A Subsidiary of Koppers, Ferro Engineering, Division of Oglebay Norton Company, Foseco, Inc., Allied Glove Corporation, BMI, Inc., Harbison–Walker Refractories, Inc., Pittsburgh Gage Company, F.B. Wright Company, Earl B. Beach Company, George V. Hamilton, Inc., North American Refractories Company, Division of Eltra Corporation, and Kaiser Refractories, Division of Kaiser Aluminum & Chemical Corporation, Hedman Mines, Ltd., Argo Packing Company, Flexitallic Gasket Corporation, Foster Wheeler Corporation, in its Own Right and as Successor–in–interest to Forty–Eight Insulations, Inc., Nichias Corporation, Safety First Industries, Inc.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Nov. 1, 1993.

Antonio D. Pyle, Pittsburgh, for appellant.

Gary Roberson, Pittsburgh, for Owens–Corning, appellee.

Concetta A. Silvaggio, Pittsburgh, for A–Best Products & Combustion Engineering, appellees.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

WIEAND, Judge:

This is an appeal from an order entering summary judgment in favor of manufacturers of asbestos products on grounds that the action against them was barred by the statute of limitations. After careful review, we affirm.

William A. Cochran was employed by Jones & Laughlin Steel Corporation from 1943 to 1944 and from 1949 to 1982 as a boilerhouse attendant, steel worker and bricklayer. During the course of his employment, Cochran was allegedly exposed to various asbestos-containing products.[1] In the summer of 1981, Cochran aggravated a prior work related injury and was admitted to the hospital on June 3, 1981, with a diagnosis being made of "acute lumbrosacral spike strain with radiculitis." Chest x-rays taken upon admission, however, disclosed a mass in one of his lungs. A lung resection was performed on June 17, 1981, and produced a postoperative diagnosis of "adenocarcinoma right upper lobe," a form of lung cancer. Histologic tissue slides disclosed asbestos bodies.

Cochran returned to work following discharge from the hospital, but he retired in 1982. When he applied for social security benefits, he was examined by Dr. Milton Bilder. Dr. Bilder's report suggested that Cochran was suffering from pulmonary emphysema and also disability resulting from the surgery for cancer and other "definite pulmonary function defects."

Cochran re-entered the hospital in March, 1985, when a second lung resection was performed. The postoperative diagnosis was an adenocarcinoma of the left lower lobe. Following this surgery, Cochran consulted a lawyer, who arranged

1. Prior to 1982, Cochran also smoked approximately one to one and one-half packs of cigarettes per day.

for an examination by Dr. Howard E. Reidbord of the histologic slides of tissue which had been removed during the 1981 and 1985 resections. Dr. Reidbord, having observed the asbestos bodies in the slides of tissue removed in 1981, concluded that both carcinomas "were, to a significant degree, related to his exposure to and inhaling of asbestos fibers [which] are well recognized as being a significant contributing factor in the high incidence of lung cancer in workers exposed to asbestos."

On September 27, 1985, Cochran and his wife commenced an action for damages against numerous manufacturers of asbestos products. Cochran died on December 31, 1985. A suggestion of death was filed in March, 1988, and Cochran's widow, as administratrix of his estate, was substituted as a party plaintiff. On or about November 13, 1991, George V. Hamilton, Inc. and A–Best Products Company, Inc., defendants, moved for summary judgment on grounds that the action was barred by the statute of limitations. Owens–Corning joined the motion. On November 18, 1991, the trial court, per the Honorable I. Martin Wekselman, entered an order granting the motion for summary judgment and dismissing the action. Plaintiff appealed.

In her argument in this Court, appellant does not contend that the carcinomas removed in 1981 and 1985 were separate diseases. See and compare: *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992), and *Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296 (1992). She contends, rather, that both were part of the same disease but argues that the statute of limitations should not begin to run until 1985, when Dr. Reidbord examined the tissue slides from the 1981 surgery and found the presence of asbestos bodies. We shall consider the case in the manner in which it has been presented.

It is well settled that the statute of limitations will begin to run on one's cause of action "as soon as the right to institute and maintain a suit arises." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468

A.2d 468, 471 (1983). "[A] party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id.* The "discovery rule" is an exception to the rule which arises from the *inability* of an injured person, despite the exercise of due diligence, to know of the injury or its cause. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992).

Regarding creeping disease cases, this Court said in *Ingenito v. A C & S, Inc.,* 430 Pa.Super. 129, 131–132, 633 A.2d 1172, 1174–75 (1993):

> In creeping diseases cases, it has been held, the statute of limitations begins to run when the injured person "knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 136–137, 471 A.2d 493, 500 (1984) (footnote omitted). "A court presented with an assertion of applicability of the 'discovery rule, must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action." *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra* at 85, 468 A.2d at 471. " 'The standard of reasonable diligence is an objective or external one that is the same for all individuals.' " *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985), quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982). "We evaluate the plaintiff's conduct in terms of what he should have known at a particular time by following a course of reasonable diligence. If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Laboratories, supra* 351 Pa.Super. at 292, 505 A.2d at 988. See: *DeMartino v. Albert Einstein Medical Center, N.D.,* 313 Pa.Super 492, 508, 460 A.2d 295, 303 (1983). A plaintiff does not need to know that he has a cause of action, or that he has suffered

an injury due to another party's wrongful conduct. " '[O]nce [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.' " *Burnside v. Abbott Laboratories, supra* at 291, 505 A.2d at 987–988, quoting *Berardi v. Johns–Manville Corp.,* 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984) (emphasis omitted). A diligent investigation may require one to seek further medical examinations as well as competent legal representation. *Souders v. Atlantic Richfield Co.,* 746 F.Supp. 570, 573 (E.D.Pa.1990), citing *United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270 (1979).

. . . .

The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. *Owens v. Lac D'Amiante Du Quebec, Ltee.,* 656 F.Supp. 981, 983 (E.D.Pa.1987), *aff'd,* 833 F.2d 306 (3d Cir.1987). The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law. *Id.* See also: *Bickford v. Joson, M.D.,* 368 Pa.Super. 211, 533 A.2d 1029 (1987), *allocatur denied,* 518 Pa. 647, 544 A.2d 959 (1988).

In the instant case, Cochran knew, at the latest in June, 1981, that he had lung cancer. That his cancer was causally related to his prior exposure to asbestos could have been ascertained by the exercise of reasonable diligence. The cause was to be found in the tissue removed during surgery and thereafter preserved in slides. If Cochran had consulted a physician and/or a lawyer in 1981, as he did in 1985, the presence of asbestos bodies in the tissue could have been ascertained. Indeed, even such consultation was unnecessary. By making inquiry of the surgeon who performed the surgery or the hospital where the surgery was conducted, the presence of asbestos bodies could have been ascertained. The exercise of due diligence required that inquiry be made. The failure to make inquiry when information was available was the failure to exercise due diligence as a matter of law. *Ingenito v. A C*

& S, Inc., supra 430 Pa.Super. at 131, 633 A.2d at 1174. See also: *Owens v. Lac D'Amiante Du Quebec, Ltee., supra.* Under the circumstances of this case, the trial court properly determined that Cochran had failed "to use all reasonable diligence to be properly informed of the facts and circumstances upon which a . . . right of recovery [was] based and to institute suit within the prescribed statutory period." *Love v. Raymark Industries, Inc.,* 430 Pa.Super. 142, 144, 633 A.2d 1185, 1187 (1993), quoting *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra* 503 Pa. at 84, 468 A.2d at 471.

Affirmed.

FORD ELLIOTT, J., files a Dissenting Opinion, in which DEL SOLE and KELLY, JJ., join.

FORD ELLIOTT, Judge, dissenting:

The reasons for my dissent, generally, have been thoroughly discussed in my dissenting Opinion in *Ingenito v. A C & S, Inc., et al.,* 430 Pa.Super. 129, 633 A.2d 1172 (1993). That same reasoning applies with equal force in this case. Therefore, I will only undertake a review of relevant facts in this case which I believe demonstrate that summary judgment was improperly granted by the trial court on the record before it.

My review of the record leads me to conclude that there were certainly questions of fact as to whether decedent exercised due diligence in ascertaining his injury and its cause. The majority focuses upon the fact that decedent was diagnosed with lung cancer in 1981, and that during his surgery tissue was removed, and preserved in slides that indicated the presence of asbestos bodies. Thus, because the evidence was available as of 1981, decedent failed to exercise due diligence in ascertaining the cause of his cancer at that time, according to the majority. Indeed, a jury might very well agree that decedent failed to exercise due diligence.

However, a jury could just as well conclude that, under the circumstances, decedent acted reasonably in not ascertaining his injury until 1985. Following decedent's 1981 surgery he was discharged with a diagnosis of "adenocarcinoma of the

right upper lobe of the lung" or lung cancer, generally. At that time decedent was smoking one to one and one-half packs of cigarettes per day and had been since 1947. There was never any discussion with decedent that his lung cancer was work-related. In fact, following the 1981 surgery, decedent had no significant medical problems until 1985, when he was again admitted to Montefiore Hospital after chest X-rays revealed a second lung mass. It was during this admission that any reference to asbestos exposure was first *noted* on the medical records. Interestingly, by this time appellant had not smoked in three years. Immediately following the 1985 surgery, decedent retained an attorney to investigate the matter. It was then that Dr. Reidbord was consulted and the asbestosis was confirmed. Suit was filed within two months of Dr. Reidbord's investigation. I believe that all these factors could well support a jury conclusion that decedent acted with due diligence in ascertaining his injury and the cause thereof.

The majority's conclusion, that decedent failed to exercise due diligence when he did not inquire as to the cause of his cancer following the 1981 surgery, fails to consider the record in a light *most favorable* to appellant as we are required to do. *See Carns v. Yingling*, 406 Pa.Super. 279, 594 A.2d 337 (1991). Considering the record in a light most favorable to appellant, we must consider that at the time of the 1981 surgery nothing was mentioned to decedent about the tissue slides or that the cancer could be work related. Recall, decedent was cleared to return to work following the surgery. It is not unreasonable to infer that decedent assumed the lung cancer was related to his smoking habit and thus made no further inquiries as to causation at that time. The inference is bolstered by the fact that the one significant change appellant made in his lifestyle following the 1981 surgery was to stop smoking. Later, in 1985, when decedent again was forced to undergo a second lung surgery and asbestos was first mentioned in the medical records, decedent immediately sought legal counsel to investigate the matter. I believe these facts cannot be interpreted, as a matter of law, as a failure to exercise due diligence.

As I discussed at length in *Ingenito,* unless the record clearly demonstrates that decedent knew or should have known that his cancer was asbestos related, then such a diagnosis, at most, triggers a duty of due diligence. Whether decedent exercised due diligence is a matter, based on this record, that is "best determined by the collective judgment, wisdom, and experience of jurors." *Petri v. Smith,* 307 Pa.Super. 261, 272, 453 A.2d 342, 347 (1982).

DEL SOLE and KELLY, JJ. join in this Dissenting Opinion.