**Barbara DREISCHALICK and David Dreischalick, her husband, Plaintiffs,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Defendant.**

**Civ. A. No. 93–73 Erie.**

United States District Court, W.D. Pennsylvania.

Feb. 2, 1994.

<hr />

**15.** Columbia's Memorandum of Law on Jurisdiction and the Width of Columbia's Right of Way, pp. 11–15.

George Schroeck, Erie, PA, for plaintiffs.

Dennis St. John Mulvihill, Lori D. Mendicino, Robb Leonard & Mulvihill, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

This action, seeking compensation for injuries allegedly caused by the use of the Dalkon Shield intrauterine device ("IUD") in the 1970s, is before the court on a Motion for Summary Judgment filed by the Defendant, the Dalkon Shield Claimants Trust ("the Trust"). The question is whether Barbara and David Dreischalick ("Plaintiffs"), who initiated this suit in 1984, are barred by the Pennsylvania statute of limitations from pursuing their claims.

The parties dispute the accrual date of Plaintiffs' cause of action and, consequently, the date upon which the statutory period began to run. The Trust argues for an accrual date in 1975, when the IUD was removed. Plaintiffs argue that equitable considerations, as embodied in the discovery rule, should toll the running of the statute until January 27, 1982.

As discussed below, the court holds that Plaintiffs' cause of action accrued no later than October 14, 1981. As a matter of law, Plaintiffs knew or should have known by that time of the possible causal relationship between their injuries and the IUD. Since this knowledge is chargeable to Plaintiffs at a date more than two years prior to the initiation of this lawsuit, the Trust's Motion for Summary Judgment will be granted.

### Factual and Procedural Background

In the summer of 1971, shortly after giving birth to a daughter, the Plaintiff wife, at the suggestion of her first husband, obtained an IUD for contraception. On August 12, 1971, she received an IUD in a procedure at an Army clinic. She allowed medical personnel to select the brand of IUD and remained unaware that it was a Dalkon Shield until at least July 15, 1975, when it was removed at the urging of a physician.

Mrs. Dreischalick states that during the entire time she retained the IUD, she had excessively long menstrual periods, bleeding for approximately two weeks out of every month. This, she says, was an impediment to marital relations and caused tension between her and her first husband. During this time, Mrs. Dreischalick also experienced cramping and back pain. Mrs. Dreischalick separated from her first husband in January of 1974. After the separation, Mrs. Dreischalick retained possession of Army medical records identifying the Dalkon Shield as the IUD that was inserted in 1971.

The IUD was removed in 1975 by an Erie gynecologist, Dr. Bu. In her deposition, Mrs. Dreischalick stated that she doubted the safety of the IUD and wanted it removed because she "was concerned about all the bleeding." Mrs. Dreischalick recalls Dr. Bu informing her that she was a "smart young lady," saying that it was a good thing she was having the IUD removed because the product had been taken off the market. Mrs. Dreischalick believes that Dr. Bu told her the IUD was a Dalkon Shield and she recalls him telling her that the IUD was probably to blame for her excessive bleeding.

Two weeks after the IUD was removed, she obtained a prescription for oral contraceptives.

Mrs. Dreischalick's medical records are unavailable for the five years following the IUD removal. However, she states that she went for pap smears on an annual basis and that she consulted a physician prior to her marriage to Mr. Dreischalick in July of 1977 to make sure that she was able to have children.

In December of 1980, Mrs. Dreischalick saw another Erie gynecologist, Dr. DeMarco, on an emergency basis complaining of pelvic pain. She was admitted to St. Vincent Health Center on December 19, 1980, and underwent pelvic surgery three days later. During the operation Dr. DeMarco removed her left fallopian tube and ovary because, according to his concurrent report, "the left fallopian tube was enlarged, chronically scarred and obstructed and entrapping the left ovary forming a left tubo-ovarian adhesive constrictive mass which was the source of pain to the patient." Mrs. Dreischalick states that she was depressed about the surgery and, consequently, did not inquire of the physician as to what may have caused the problem.

Ten months after the first surgery, Mrs. Dreischalick was again admitted to St. Vincent Health Center with vaginal bleeding and pelvic pain. Surgery performed on October 14, 1981, revealed an ectopic pregnancy in the right fallopian tube and Dr. DeMarco excised the fallopian tube, leaving the right ovary. Mrs. Dreischalick states that, again, she did not ask Dr. DeMarco what could have caused the problem.

Due to both surgeries, Dr. DeMarco informed Mrs. Dreischalick that her child-bearing ability was severely limited. She was told that even utilizing in vitro fertilization, her chance in the future of carrying a baby to term was just seven percent.

More than two years after her 1981 surgery, on December 24, 1983, Mrs. Dreischalick happened to see a newspaper article about a Philadelphia jury awarding $5.15 million to a woman injured by use of the Dalkon Shield in the early 1970s. Mrs. Dreischalick states that the article prompted her to check the Army medical records she had retained from her first marriage. She stated in her deposition:

> I read this article in the paper and it kind of worked me up. I saw that, and I thought maybe I had a Dalkon Shield, because I—the name sounded so familiar, so I went in and looked in my records, and at first I couldn't find it, and then it was on the back of one of the sheets, you know, that it gave the name, and I kind of like was in shock about it. I was very—I thought, that's me. This is what I had. That's me.

Plaintiffs initiated this action on January 27, 1984, by filing a Praecipe for Writ of Summons against A.H. Robins Co., Inc. ("Robins"), in the Court of Common Pleas of Erie County, Pennsylvania. Plaintiffs' Complaint, filed on April 23, 1984, alleged that Mrs. Dreischalick was injured as a result of her use between 1971 and 1975 of the Dalkon Shield, which had been manufactured by Robins.

On August 21, 1985, Robins filed a Petition under Chapter 11 of the Bankruptcy Act in the United States District Court for the Eastern District of Virginia. As a result of the bankruptcy, the action filed in the Court of Common Pleas of Erie County was automatically stayed pursuant to 11 U.S.C. § 362(a). On February 25, 1993, Plaintiffs were authorized to proceed with their cause of action against the Trust, which is Robins' successor-in-interest. The Trust was created by a Plan of Reorganization to pay valid Dalkon Shield claims. On March 23, 1993, the Trust filed a Notice of Removal pursuant to 28 U.S.C. § 1452.

*Applicable Law*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A sum-

mary judgment can properly be entered in favor of a defendant where plaintiff's cause of action is barred by the statute of limitations. *Ingenito v. AC & S, Inc.,* 633 A.2d 1172, 1174 (Pa.Super.1993), citing *Wible v. Apanowicz,* 306 Pa.Super. 262, 452 A.2d 545 (1982).

In Pennsylvania, personal injury claims based on either negligence or strict liability must be commenced within two years after the claim accrues. *See* 42 Pa.C.S.A. § 5524(2) (Purdon's 1981 & Supp.1993).[1] As a rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. *Ingenito,* 633 A.2d at 1174. Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Id.* Lack of knowledge, mistake or misunderstanding does· not toll the running of the statute of limitations. *Id.,* quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983).

In general, the statutory period will begin to run when the cause of action accrues, i.e., the date on which the injury is sustained. *Ingenito,* 633 A.2d at 1174.[2] An injury is done "when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Id.,* quoting *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788, 792 (1959).

The discovery rule exception to the statute of limitations was judicially created to prevent harsh results. It arises from the inability of an injured person, despite the exercise of due diligence, to know of an injury or its cause. *Ingenito,* 633 A.2d at 1174, citing *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (1992). When the discovery rule is applicable, the limitations period begins to run when

"the plaintiff knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *See A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128, 130 (1993) (citations omitted).

Before applying the discovery rule exception, a court must address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action. *Ingenito,* 633 A.2d at 1174, quoting *Pocono,* 468 A.2d at 471. In order to determine what is reasonable diligence in a particular case, the court must evaluate the plaintiff's actions to discover whether she exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342, 347 (1982), quoting Restatement (Second) of Torts § 283, comments b & c.

The standard of reasonable diligence is an objective or external one that is the same for all individuals. *Petri,* 453 A.2d at 347. If a party has the means of discovery within her power but neglects to use them, her claim will be barred. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 988 (1985), citing *De Martino v. Albert Einstein Medical Center N.D.,* 313 Pa.Super. 492, 460 A.2d 295, 303 (1983). A plaintiff does not need to know that she has a cause of action, or that she has suffered an injury due to another party's wrongful conduct. *See Ingenito,* 633 A.2d at 1174, quoting *Burnside,* 505 A.2d at 987–88. Once a plaintiff possesses the salient facts concerning the occurrence of her injury and who or what caused it, she has the ability to investigate and pursue her claim. *Id.*

In most situations, the question of the application of a statute of limitations

---

**1.** Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 487 (3d Cir.1985), citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Witherow v. Firestone Tire and Rubber Co.,* 530 F.2d 160 (3d Cir.1976).

**2.** David Dreischalick's derivative claims share the same accrual date as his wife's claims for personal injury. *See Holder v. Eli Lilly & Co.,* 708 F.Supp. 672, 673 (E.D.Pa.), *aff'd,* 887 F.2d 261 (3d Cir.1989).

defense, especially where a question of due diligence in discovery is raised, is a factual determination for the jury. *See Citsay v. Reich*, 380 Pa.Super. 366, 551 A.2d 1096, 1099 (1988). "Only where the facts are undisputed and lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable may the question be decided as a matter of law on summary judgment." *Burnside*, 505 A.2d at 988, citing *Anthony v. Koppers Co.*, 284 Pa.Super. 81, 425 A.2d 428, 443 (1980), *rev'd on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981). *See also Citsay*, 551 A.2d at 1099 ("in an appropriate case the litigation of a limitation issue, independent of the merits of the plaintiff's claim, can be accomplished by invoking the summary judgment procedure").

█ The statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim usually rests with the defendant. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir.1985). However, under Pennsylvania law, the burden shifts to the plaintiff where she seeks to establish that the statute should be tolled by the discovery rule:

> The plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred. He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did. *Patton v. Commonwealth Trust Co.*, 276 Pa. 95, 99, 119 A. 834 (1923).

*Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir.1985), quoting *Bickell v. Stein*, 291 Pa.Super. 145, 435 A.2d 610, 612 (Super.1981).

### DISCUSSION

█ Plaintiffs' Complaint and Brief reveal that they knew or should have known of a possible causal relationship between their injuries and the IUD at some date more than two years prior to the initiation of this action.

We are guided to this conclusion by a number of recent decisions by the Superior Court of Pennsylvania discussing the due diligence requirement of the discovery rule. *See Ingenito, supra; Cochran v. GAF Corp.*, 633 A.2d 1195 (Pa.Super.1993); *Bradley v. Ragheb*, 429 Pa.Super. 616, 633 A.2d 192 (1993); *Murray v. Hamot Medical Center*, 429 Pa.Super. 625, 633 A.2d 196 (1993); *Love v. Raymark Indus., Inc.*, 633 A.2d 1185 (1993). In these cases, the Superior Court affirmed orders of summary judgment denying applications of this exception to the statute of limitations.

In *Cochran, supra*, the court specifically addressed a plaintiff's duty of investigation as it pertains to questioning a treating physician regarding the cause of an ailment. Writing for the *en banc* majority, Judge Wieand held that "[t]he failure to make inquiry when information was available was the failure to exercise due diligence as a matter of law." *Cochran*, 633 A.2d at 1198, citing *Ingenito*, 633 A.2d at 1174. The facts of *Cochran* are sufficiently similar to those in the instant case to warrant the same legal conclusion.

Mr. Cochran alleged that he was exposed to asbestos during the course of his employment prior to 1982. In 1981, he was diagnosed with a type of lung cancer, and histologic tissue slides disclosed asbestos bodies. In 1982, he was diagnosed with pulmonary emphysema and other pulmonary problems.

In March 1985, Mr. Cochran was diagnosed with adenocarcinoma of the left lower lobe. Following surgery, Mr. Cochran consulted a lawyer, who arranged for an examination of the tissue slides dating from both the 1981 and 1985 surgeries. It was determined that both carcinomas "were, to a significant degree, related to his exposure to and inhaling of asbestos fibers [which] are well recognized as being a significant contributing factor in the high incidence of lung cancer in workers exposed to asbestos." 633 A.2d at 1196.

Mr. Cochran and his wife commenced an action for damages on September 27, 1985. They argued that the statute of limitations should not begin to run until 1985. The trial

court entered an order granting defendant's motion for summary judgment and dismissed the action as untimely. The Superior Court affirmed, concurring that the Cochrans had failed "to use all reasonable diligence to be properly informed of the facts and circumstances upon which a ... right of recovery [was] based and to institute suit within the prescribed statutory period." 633 A.2d at 1197.

Judge Wieand noted that "the polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff." *Cochran,* 633 A.2d at 1198, quoting *Owens v. Lac D'Amiante Du Quebec, Ltee.,* 656 F.Supp. 981, 983 (E.D.Pa.1987), *aff'd,* 833 F.2d 306 (3d Cir.1987). Furthermore, the failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law. *Id.* Affirming summary judgment against the Cochrans, Judge Wieand wrote:

That [Mr. Cochran's] cancer was causally related to his prior exposure to asbestos could have been ascertained by the exercise of reasonable diligence. The cause was to be found in the tissue removed during surgery and thereafter preserved in slides. If Cochran had consulted a physician and/or a lawyer in 1981, as he did in 1985, the presence of asbestos bodies in the tissue could have been ascertained. Indeed, even such consultation was unnecessary. By making inquiry of the surgeon who performed the surgery or the hospital where the surgery was conducted, the presence of asbestos bodies could have been ascertained. The exercise of due diligence required that inquiry be made.

*Cochran,* 633 A.2d at 1198, citing *Ingenito, supra.*

Similarly, in *Ingenito,* the Superior Court affirmed that the discovery rule did not apply to toll the statute where an asbestos plaintiff failed "to discover promptly the possibility of a causal connection between his diagnosed condition and his industrial exposure to asbestos." *Ingenito,* 633 A.2d at 1175. The court ruled this failure unreasonable as a matter of law, stating:

[Mr. Ingenito's] history of industrial exposure to asbestos was known to him and to the physician who made the diagnosis. The exercise of reasonable diligence would have suggested that Ingenito inquire of his physician concerning the cause of his illness. This information was immediately knowable and available to him. It was not a diagnosis or a cause which was obscure, unascertainable or unavailable in the exercise of due diligence.

*Id.*

Before applying the discovery rule exception, we must address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action. *Pocono,* 468 A.2d at 471. In the instant case, Plaintiffs have not met their burden of showing that the fact of a cause of action was obscure or unascertainable during the two years after Mrs. Dreischalick's ectopic pregnancy in 1981. In fact, Plaintiffs offer absolutely no evidence of reasonable diligence in ascertaining the pertinent facts during that period.

Rather than offer evidence of reasonable diligence, Plaintiffs rely on deposition testimony by Dr. DeMarco regarding the variety of factors that may cause an ectopic pregnancy. Plaintiffs' ask, "If Dr. DeMarco has difficulty in determining what causes an ectopic pregnancy, how can Barbara Dreischalick, a layman, be expected to do so?"

Plaintiffs misapprehend that under the discovery rule, a duty is assigned to the plaintiff, not to her doctor. Application of this exception to the statute of limitations depends upon the plaintiff demonstrating the "attention, knowledge, intelligence and judgement" necessary to protect her own interests and those of others. *Petri,* 453 A.2d 342, 347. Consequently, unless the doctor engages in fraud or concealment to deter the plaintiff from inquiring into her condition or its cause, the duty to make such inquiry is the plaintiff's alone. *See Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081, 1089 (1989), citing *Molineaux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987).

Here, Mrs. Dreischalick had the means of discovery within her power, but neglected to

use them. Mrs. Dreischalick had knowledge that her own medical history included use of an IUD in the 1970s. The physician who removed the IUD told her she was "smart" for doing so because the product was to blame for her excessive bleeding. He also told her that the product had been pulled from the market.

In 1980, five years after the IUD was removed, Mrs. Dreischalick suffered a recurrence of gynecological problems, attributed by Dr. DeMarco to chronic scarring and obstruction. Although she underwent surgery at that time, and again ten months later, that she was told severely limited her childbearing capability, Mrs. Dreischalick did not inquire of medical personnel about the cause of her chronic scarring and eventual infertility. Under these circumstances, even if her physician did not inform her of the cause of her gynecological problems, it was unreasonable as a matter of law for her not to make inquiry. *See Love,* 633 A.2d at 1187.

In his deposition, Dr. DeMarco, Plaintiff's surgeon, stated that he had been convinced since the early 1970s that IUDs could damage the reproductive organs, and had refused to prescribe them. However, it is not Dr. DeMarco's opinion regarding a possible causal link, but Mrs. Dreischalick's failure to inquire as to causation, that the court finds dispositive regarding the discovery rule. *See also Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1105 (7th Cir.1985) (exercise of diligence in pursuing pertinent facts need not equate with acquiring precise proof of causation).

Under the standard of due diligence pronounced by the Superior Court of Pennsylvania, the discovery rule will not toll the statute of limitations in the instant case beyond October 14, 1981, the date of Mrs. Dreischalick's surgery for ectopic pregnancy. In the absence of due diligence to discover her cause of action, it is simply unreasonable to toll the statute based on Mrs. Dreischalick's claim that concern about her earlier IUD use was awakened by a multi-million dollar jury award in 1983, rather than by her surgeries in 1980 and 1981.

Given this result, the court finds it unnecessary to decide, as a matter of law, whether Plaintiffs' cause of action accrued in 1975, as asserted by the Trust, or at some point after Mrs. Dreischalick's 1981 surgery, as asserted by the Plaintiffs. Here, the undisputed facts lead unerringly to the conclusion that Mrs. Dreischalick's failure, by the time of her 1981 surgery, to inquire regarding a possible causal connection to her prior use of the Dalkon Shield was unreasonable as a matter of law. The Plaintiffs' claims are barred because more than two years passed after the necessary information was available to them without their asserting any cause of action.

Although the purpose of the discovery rule is to mitigate, in worthy cases, the harshness of an absolute and rigid period of limitations, the rule cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists. *See Ingenito,* 633 A.2d at 1175. In the instant case, the Trust disputes any causal link between the IUD and Mrs. Dreischalick's surgeries. Furthermore, the Trust claims prejudice due to the absence of any medical records for the five years that elapsed between her episodes of pelvic pain. The Trust's arguments reflect the purpose of statutes of limitation, which is to stimulate "the prompt pursuit of legal rights and the avoidance of the inconvenience and prejudice resulting from deciding stale cases on stale evidence." *Id.* (citations omitted).

Finally, Plaintiffs do not dispute the Trust's assertion that the warranty claims in Plaintiffs' Complaint are governed by the four year statute of limitations in the Uniform Commercial Code, § 2–725. *See Williams v. West Penn Power Co.,* 502 Pa. 557, 467 A.2d 811 (1983) (holding that the limitations period contained in the Commercial Code applies to warranty actions for personal injury in Pennsylvania). Nor do Plaintiffs dispute that the date of breach in warranty claims is the date of tender of delivery, regardless of whether the plaintiff has knowledge of the breach. In the absence of any argument from Plaintiffs that their warranty claims did not accrue on August 12, 1971, when Mrs. Dreischalick's Dalkon Shield was inserted, the court rules that the applicable limitations period expired in 1975. Thus,

**318**

Plaintiffs' breach of warranty claims are also time barred.

An appropriate Order will be entered.

### *ORDER*

AND NOW, this 2nd day of February, 1994,

After careful consideration, and a review of the Briefs filed by the parties,

IT IS ORDERED that Defendant's Motion for Summary Judgment based on the statute of limitations is GRANTED and judgment is entered in favor of the Defendant, Dalkon Shield Claimants Trust, and against the Plaintiffs, Barbara and David Dreischalick.